IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MARLENE MCADAM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.: _____ |
| | ) |
| | ) |
| PFIZER, INC., PHARMACIA | ) |
| CORPORATION and G.D. SEARLE LLC, | ) |
| (f/k/a G.D. Searle & Co.) | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Marlene McAdam, by and through the undersigned counsel, hereby files this Complaint and Demand for Jury Trial against Pfizer, Inc., Pharmacia Corporation, and G.D. Searle LLC (f/k/a G.D. Searle & Co.) (hereafter "Defendants") and states on information and belief as follows:

**JURISDICTION**

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332, because the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs, and because there is complete diversity of citizenship between the Plaintiff and all Defendants.

**TAG-ALONG ACTION**

2. This is a potential tag-along action and in accordance with 28 U.S.C. § 1407, it should be transferred to the United States District Court for the Northern District of California for inclusion in *In re Bextra and Celebrex Marketing, Sales Practice and Products Liability Litigation*, MDL-1699 (Hon. Charles R. Breyer).

**PARTIES**

3. Plaintiff Marlene McAdam is a citizen and resident of East Millinocket, Maine.

4. Defendant Pfizer, Inc. ("Pfizer") is a Delaware corporation with its principal place of business in New York. In 2003, Pfizer acquired Pharamcia for nearly $60 billion. As a wholly-owned subsidiary of Pfizer, Pharmacia acted in all aspects as Pfizer's agent and alter ego. At all relevant times, Pfizer and/or its predecessors in interest were engaged in the business of designing, testing, manufacturing, packaging, marketing, distributing, promoting, and selling Celebrex in Maine and throughout the United States.

5. Defendant Pharmacia is a Delaware corporation with its principal place of business in New Jersey. Pharmacia was created in April 2000 through the merger of Pharmacia & Upjohn with Monsanto Company and its G.D. Searle unit. Pharmacia is now a wholly-owned subsidiary of Pfizer. At all relevant times, Pharmacia and its predecessors in interest have been engaged in the business of designing, testing, manufacturing, packaging, marketing, distributing, promoting, and selling the drug Celebrex in Maine and throughout the United States.

6. Defendant G.D. Searle LLC (f/k/a G.D. Searle & Co.) ("Searle") is a Delaware corporation with its principal place of business in Illinois. In April 2000, Defendant Searle was acquired by and became a wholly-owned subsidiary of Pharmacia. At the time of Pfizer acquisition of Pharmacia, Searle was a wholly-owned subsidiary of Pharmacia, acting as its agent and alter ego in all matters alleged in this Complaint, and is now a wholly-owned subsidiary of Pfizer. At all relevant times, Searle has been engaged in the business of designing, testing, manufacturing, packaging, marketing, distributing, promoting, and selling the drug Celebrex in Maine and throughout the United States.

**MISNOMER/ALTER-EGO**

7. In the event any parties are misnamed or not included herein, it is the Plaintiff's contention that such a misnomer and/or such parties are/were "alter egos" of parties named herein. Alternatively, Plaintiff contends that such "corporate veils" should be pierced to hold such parties properly included in the interest of justice.

**GENERAL FACTUAL ALLEGATIONS**

8. At all times relevant herein, Defendants were in the business of designing, manufacturing, marketing, developing, testing, labeling, promoting, distributing, and selling the prescription drug Celebrex.

9. Celebrex, a non-steroidal anti-inflammatory ("NSAID"), was designed to relieve pain and inflammation in the body without the adverse gastrointestinal effects of traditional NSAIDs such as aspirin, naproxen, or ibuprofen.

10. On December 31, 1998, the FDA approved Celebrex for the treatment and management of acute pain in adults and for the treatment of certain types of arthritis pain. Although the FDA found Celebrex to be effective for the treatment of arthritis, the FDA noted that further studies would need to be performed to see if Celebrex actually caused fewer severe gastrointestinal side effects than other NSAID products.

11. Celebrex is in a class of drugs known as COX-2 inhibitors. COX-2, short for cyclooxygenase-2, is one of two cyclooxygenase enzymes expressed in the human body.

12. COX-1 enzymes are expressed constitutively and are responsible for the production of the mucosal lining of the gastrointestinal tract and thromboxane A2. Thromboxane A2 is an important clotting factor in the blood stream which stimulates platelet aggregation and vasoconstriction (arterial narrowing).

13. COX-2 enzymes are induced at sites of inflammation and pain in the body. COX-2 enzymes are responsible for the production of prostaglandins, which assist in reducing pain, swelling and discomfort in the body, and prostacyclin. Prostacyclin has the opposite effect of thromboxane A2 in the blood stream: it inhibits platelet aggregation and causes vasodilation (arterial widening).

14. In the normal human, thromboxane A2 and prostacyclin are in a state of homeostasis with their effects canceling each other out. However, because COX-2 inhibitors selectively inhibit only COX-2 enzymes, they place the body in a "pro-thrombotic" state as the absence of prostacyclin production tips the body's natural balance in favor of thromboxane A2 and platelet aggregation.

15. The prothrombotic effect of COX-2 inhibitors, such as Celebrex, causes the increased incidence of adverse cardiovascular events, including serious adverse cardiovascular events, in patients taking these drugs.

16. Indeed, soon after Defendant launched Celebrex, a study published in the Journal of the American Medical Association (JAMA) in 2000 reported increased cardiovascular toxicity with Celebrex use. This study, known as the CLASS trial, also found more arrhythmias, or fibrillation with Celebrex than in the other NSAIDs studied. Non-aspirin users taking Celebrex had an even higher rate of fibrillation.

17. Meanwhile, other studies were showing that Celebrex was not any safer for the gastrointestinal tract. A 2002 study conducted by researchers at the Prince of Wales Hospital in Hong King concluded that Celebrex was not more effective than older anti-inflammatory drugs at reducing the risk of recurrent ulcer bleeding in patients with arthritis.

18.     Despite this information, Defendants continued to advertise, market, and sell Celebrex as a safer pain reliever than its competitors while at the same time denying and/or downplaying the known cardiovascular risks associated with Celebrex.

19.     In September 2004, Vioxx, another COX-2 inhibitor in the same class as Celebrex, was withdrawn from the market due to the increased risk of cardiovascular events after several months of use. Defendant Pfizer chose to keep Celebrex on the market and to continue marketing Celebrex to the public as the safer alternative.

20.     Concerned that the medical community did not know whether all COX-2 inhibitors were as cardiotoxic as Vioxx, the FDA insisted that Defendants stop marketing Celebrex in the wake of the Vioxx recall.

21.     Several months after the Vioxx recall, Defendant Pfizer was forced to halt a study that was assessing whether Celebrex could reduce the recurrence of colon polyps. A statistically significant elevation in the risk for major fatal or non fatal cardiovascular events was seen in patients taking Celebrex compared to the placebo group. Despite the report, Defendant Pfizer chose to keep Celebrex on the market.

22.     Thereafter, on April 7, 2005, in light of heightened concerns over the safety of all COX-2s, the FDA requested that Celebrex carry the strongest possible warning - a black boxed warning - concerning Celebrex's potential for serious adverse cardiovascular events.

**SPECIFIC FACTUAL ALLEGATIONS**

23.     Marlene McAdam was 57 years old when she was prescribed and began using 400 milligrams per day of Celebrex pursuant to her physician's instructions to combat joint pain. On or about May 25, 2002, approximately four months after beginning to use Celebrex, Ms. McAdam experienced an acute myocardial infarction. Due to the emergent nature of Ms.

McAdam's condition, she was life-flighted to Eastern Maine Medical Center for an emergency heart catheterization and stent placement. As a direct result of her use of Celebrex, Plaintiff McAdam has suffered severe and permanent physical injuries, emotional distress, and economic loss from which she has never been able to fully recuperate.

## FIRST CAUSE OF ACTION
## STRICT LIABILITY

24. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein and further alleges as follows:

25. Defendants were engaged in the business of manufacturing, designing, testing, marketing, distributing, and selling Celebrex as has previously been alleged and described herein.

26. Celebrex as manufactured and sold by Defendants reached the Plaintiff without substantial change in its condition and was used by Plaintiff in a reasonably foreseeable and intended manner.

27. Celebrex was "defective" and "unreasonably dangerous" when it entered the stream of commerce and was received by Plaintiff, in one or more of the following respects:

    i. Celebrex was sold without adequate warnings regarding all possible adverse side effects associated with the use of Celebrex. Such side effects were known or knowable to the Defendants and included, but were not limited to, to the risk that the user would suffer a serious adverse cardiovascular event;

    ii. Celebrex was defective in design in that it was more dangerous than an ordinary consumer would expect and more dangerous than other forms of treatment for the same symptoms. Celebrex was further defective in design because it selectively suppresses an enzyme that inhibits platelet aggregation and stimulates vasodilation in the body. Thus, Celebrex puts a

user in a prothrombotic or clot forming state from which one is at an increased risk of suffering serious injury including, without limitation, adverse cardiovascular events.

      iii.      Defendants failed to develop and make available alternative products that were designed in a safe or safer manner, even though such products were feasible and marketable.

28.    Plaintiff neither knew, nor had reason to know at the time of ingestion or at any time prior thereto of the unreasonable and defective condition of Celebrex as has previously been described.

29.    As a direct and proximate result of the defective and unreasonably dangerous condition of Celebrex, Plaintiff ingested Celebrex and suffered an acute myocardial infarction on May 25, 2002.

30.    As a further direct and proximate result of the defective and unreasonably dangerous condition of Celebrex, Plaintiff McAdam has suffered severe and permanent physical injuries, emotional distress, and economic loss from which she has never been able to fully recuperate as previously alleged and described.

**SEDCOND CAUSE OF ACTION**
**NEGLIGENCE**

31.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein and further alleges as follows:

32.    Defendants had a duty to exercise reasonable care in the manufacture, sale, and distribution of Celebrex, including a duty to ensure that Celebrex did not pose a significant increased risk of injury to its users.

33.    Defendants had a duty to exercise reasonable care in the advertising and sale of Celebrex, including a duty to warn consumers, including the Plaintiff, of the dangers associated

7

with the consumption of Celebrex that were known or should have been known to Defendants at the time of the sale of Celebrex to the Plaintiff.

34. Defendants failed to exercise reasonable care in the design, formulation, manufacture, sale and distribution of Celebrex because Defendants knew or should have known that Celebrex had a propensity to cause serious injury, including without limitation, serious adverse cardiovascular events.

35. Defendants failed to exercise ordinary care in the labeling of Celebrex and failed to issue adequate pre-marketing or post-marketing warnings to prescribing doctors and the general public regarding the risk of serious injury, including without limitation, serious adverse cardiovascular events.

36. Defendants knew or should have known that Plaintiff could foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care as described above.

37. As a direct and proximate result of Defendants' failure to exercise ordinary care in the design, formulation, manufacture, sale and distribution of Celebrex, Plaintiff ingested Celebrex and suffered an acute myocardial infarction on May 25, 2002.

38. As a further direct and proximate result of Defendants' failure to use ordinary care, Plaintiff McAdam has suffered severe and permanent physical injuries, emotional distress, and economic loss from which she has never been able to fully recuperate as previously alleged and described.

### THIRD CAUSE OF ACTION
### BREACH OF IMPLIED WARRANTIES

39. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein and further alleges as follows:

40. Defendants manufactured, marketed, and sold Celebrex as has previously been alleged and described herein.

41. Celebrex was manufactured, marketed, packaged, labeled, and sold by Defendants with implied warranties of merchantability and of fitness for its intended purpose: namely that Plaintiff could ingest Celebrex without the risk of serious injury.

42. Plaintiff reasonably relied upon Defendants' implied warranties in purchasing and consuming Celebrex.

43. Defendants breached the implied warranties because Celebrex was and continues to be neither of merchantable quality nor safe for its intended use in that Celebrex has the known propensity to cause serious adverse cardiovascular events.

44. As a direct and proximate result of Defendants' breach of the implied warranties of merchantability and fitness for its intended purpose, Plaintiff ingested Celebrex and suffered an acute myocardial infarction on May 25, 2002.

45. As a further direct and proximate result of Defendants' breaches of the implied warranties of merchantability and fitness for a particular purpose, Plaintiff McAdam has suffered severe and permanent physical injuries, emotional distress, and economic loss from which she has never been able to fully recuperate as previously alleged and described.

## FOURTH CAUSE OF ACTION
## BREACH OF EXPRESS WARRANTY

46. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein and further alleges as follows:

47. Defendants through its marketing program, aggressive direct-to-consumer advertising campaign, promotional activities, product labeling, package inserts, and other written and verbal assurances expressly warranted that Celebrex was safe for its intended use.

48. Plaintiff reasonably relied upon Defendant's express warranties in purchasing and consuming Celebrex.

49. Celebrex as manufactured and sold by Defendants did not conform to these express representations in that Celebrex had a known propensity to cause serious adverse cardiovascular events.

50. As a direct and proximate result of Defendants' breach of its express warranties, Plaintiff ingested Celebrex and suffered an acute myocardial infarction on May 25, 2002.

51. As a further direct and proximate result of Defendants' breaches of their express warranties, Plaintiff McAdam has suffered severe and permanent physical injuries, emotional distress, and economic loss from which she has never been able to fully recuperate as previously alleged and described.

## FIFTH CAUSE OF ACTION
## FRAUD

52. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein and further alleges as follows:

53. Defendants had actual knowledge at the time of sale of Celebrex to the Plaintiff, based upon studies, published reports, and their own clinical trials, that Celebrex created a risk of serious bodily injury to its users, including without limitation, serious adverse cardiovascular events.

54. Defendants intentionally omitted, concealed and/or suppressed this information from consumers, including the Plaintiff, in order to avoid losses in sales to consumers and market share to its major competitors.

55. Moreover, Defendants engaged in an aggressive marketing strategy and direct-to-consumer advertising campaign, which included false representations regarding the safety profile

10

and known adverse side effects of Celebrex to create the impression and to convey to Plaintiff and the general public that the use of Celebrex was safe and had fewer adverse health and side effects than were known or should have been known by Defendants at the time of these representations.

56. Specifically, Defendants falsely represented and/or actively concealed from the Plaintiff and the general public:

    iv. that published studies and clinical trials showed a statistically significant increase in adverse cardiovascular side effects associated with Celebrex including, without limitation, serious adverse cardiovascular events;

    v. that Celebrex was not adequately tested for cardiovascular side effects before or after its introduction on the market;

    vi. that Celebrex had a favorable safety profile and was fit for human consumption; and

    vii. that the benefits of taking Celebrex outweighed any associated risks.

57. Celebrex was, in fact, unsafe as it posed a risk of injury and death which outweighed any purported benefits.

58. Defendants knew or should have known that its representations regarding the safety of Celebrex were, in fact, false, and actively made such representations with the intent, design, and purpose that Plaintiff and others, including prescribing physicians, rely on these representations leading to the prescription, purchase and/or consumption of Celebrex.

59. At all times herein, Plaintiff was unaware of the falsity underlying Defendants' statements and reasonably believed Defendants' false statements about the safety and efficacy of Celebrex to be true.

60. Plaintiff had a right to rely on Defendants' representations because Defendants held themselves out as having expertise and specialized knowledge in the pharmaceutical industry.

61. Plaintiff's decedent justifiably relied upon to his detriment and/or was induced by Defendants' false statements and active concealment over the safety of Celebrex, because at no time did Plaintiff's decedent have the knowledge or expertise necessary to independently evaluate the safety of Celebrex.

62. As a direct and proximate result of Defendants' false representations and/or active concealment of material facts regarding the safety and efficacy of Celebrex, Plaintiff ingested Celebrex and suffered an acute myocardial infarction on May 25, 2002.

63. As a further direct and proximate result of Defendants' fraudulent acts and omissions, Plaintiff McAdam has suffered severe and permanent physical injuries, emotional distress, and economic loss from which she has never been able to fully recuperate as previously alleged and described.

### SIXTH CAUSE OF ACTION
### VIOLATION OF MAINE'S UNFAIR TRADE PRACTICES ACT
### ( 5 M.R.S.A. §§ 205-A – 214)

64. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein and further alleges as follows:

65. The Maine Unfair Trade Practices Act provides that it shall be unlawful for any person to use any unfair or deceptive act or practice in the conduct of any trade or commerce within Maine.

66. Defendants willfully violated the Maine Unfair Trade Practices Act by making false and misleading representations or omissions of material fact concerning the safety, use, efficacy, testing, and risks of Celebrex to the Plaintiff and the general public.

67. Defendants further willfully violated the Maine Unfair Trade Practices Act by failing to disclose and/or downplaying the risks associated with Celebrex when Defendants had actual knowledge or should have known of the serious side effects associated with Celebrex including, but not limited to, adverse cardiovascular events.

68. As a direct and proximate result of Defendants' willful violation of the Maine Unfair Trade Practices Act, Plaintiff ingested Celebrex and suffered a cardiac event on May 25, 2002.

69. As a further direct and proximate result of Defendants' unfair, unconscionable, deceptive, and fraudulent acts and/or trade practices in violation of 5 M.R.S.A. §§ 205-A – 214, Plaintiff McAdam has suffered severe and permanent physical injuries, emotional distress, and economic loss from which she has never been able to fully recuperate as previously alleged and described.

## SEVENTH COUNT- PUNITIVE DAMAGES

70. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein and further alleges as follows:

71. Plaintiff is entitled to punitive damages because the Defendants' breaches of their duties to Plaintiff, including their failure to adequately warn about the cardiovascular risks of Celebrex, was deliberate, intentional, and/or motivated by malice or ill will toward the Plaintiff. The Defendants intentionally misled Plaintiff, her health care providers, the medical community, and the public at large by making false representations about the safety of Celebrex.

72. Defendants intentionally downplayed, understated and/or misrepresented their actual knowledge of the potential for serious injury, including but not limited to, myocardial infarction, with the use of Celebrex despite available information demonstrating that Celebrex was likely to cause serious tendon-related injuries to users.

73. Defendants were in possession of evidence demonstrating that Celebrex caused serious injuries, including but not limited to, myocardial infarction. Nevertheless, Defendants continued and continue to this day to market Celebrex by providing false and misleading information to the Plaintiff and the general public with regard to the safety and efficacy of Celebrex.

74. Defendants' outrageous actions described above were performed willfully, intentionally, and with malice in their disregard for the rights of the Plaintiff and the general public.

75. Accordingly, Plaintiff seeks and is entitled to punitive or exemplary damages in an amount to be determined at trial.

**WHEREFORE**, Plaintiff prays for relief against Defendants, jointly and severally, as follows:

1. Compensatory damages according to proof, in excess of the amount required for federal diversity jurisdiction, and in an amount to fully compensate Plaintiff for all of her injuries and damages, both past and present;

2. Special damages according to proof, in excess of the amount required for federal diversity jurisdiction and in an amount to fully compensate Plaintiff for all of her injuries and damages, both past and present, including but not limited to, past and future medical expenses,

costs for past and future rehabilitation and/or home health care, permanent disability, including permanent instability and loss of balance, and pain and suffering.

      3.      Double or triple damages as allowed by law;

      4.      Punitive damages as allowed by law and in an amount to be determined at trial;

      5.      A full refund for all prescriptions paid;

      6.      Attorneys' fees, expenses, and costs of this action;

      7.      Pre-judgment and post-judgment interest in the maximum amount allowed by law; and

      8.      Such further relief as this Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims asserted in this Complaint.

Dated:   May 22, 2008

Respectfully submitted,
LEWIS SAUL & ASSOCIATES

/s/ Kevin M. Fitzgerald
Kevin M. Fitzgerald, Esq.
Maine Bar No. 0009373
183 Middle Street, Suite 200
Portland, ME 04101
Phone: (207) 874-7407
Facsimile: (207) 874-4930
Email: kfitzgerald@lewissaul.com

*Attorneys for Plaintiff*

⊗JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Marlene McAdam

**DEFENDANTS**
Pfizer, Inc., Pharmacia Corp., and GD Searle, LLC

(b) County of Residence of First Listed Plaintiff: Penobscot Cty, ME
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: New York Cty, NY
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Kevin Fitzgerald, Esq., Lewis Saul & Assoc., PC, 183 Middle St., Ste. 200, Portland, ME 04101 (207) 874-7407

Attorneys (If Known): Unknown

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☒ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity): 28 U.S.C. § 1332
Brief description of cause: Product Liability

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ > $ 75,000.00
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE Charles R. Breyer
DOCKET NUMBER MDL 1699; M05-cv-1699 CRB N.D. of California

DATE: May 22, 2008
SIGNATURE OF ATTORNEY OF RECORD: s/ Kevin M. Fitzgerald, Esq.

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

SCANNED
FILED

Inasmuch as no objection is pending at this time, the stay is lifted.

JUL - 8 2008

CLERK'S OFFICE
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUL 2 3 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

JUDICIAL PANEL ON
U.S. DISTRICT MULTIDISTRICT LITIGATION
PORTLAND, MAINE
RECEIVED AND JUN 19 2008

2008 JUL 28 P 2:27 FILED
CLERK'S OFFICE

UNITED STATES JUDICIAL PANEL
on
MULTIDISTRICT LITIGATION

DEPUTY CLERK

IN RE: BEXTRA AND CELEBREX MARKETING, SALES
PRACTICES AND PRODUCTS LIABILITY LITIGATION

MDL No. 1699

(SEE ATTACHED SCHEDULE)

**CONDITIONAL TRANSFER ORDER (CTO-104)**

On September 6, 2005, the Panel transferred 30 civil actions to the United States District Court for the Northern District of California for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. See 391 F.Supp.2d 1377 (J.P.M.L. 2005). Since that time, 1,234 additional actions have been transferred to the Northern District of California. With the consent of that court, all such actions have been assigned to the Honorable Charles R. Breyer.

It appears that the actions on this conditional transfer order involve questions of fact that are common to the actions previously transferred to the Northern District of California and assigned to Judge Breyer.

Pursuant to Rule 7.4 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 199 F.R.D. 425, 435-36 (2001), these actions are transferred under 28 U.S.C. § 1407 to the Northern District of California for the reasons stated in the order of September 6, 2005, and, with the consent of that court, assigned to the Honorable Charles R. Breyer.

This order does not become effective until it is filed in the Office of the Clerk of the United States District Court for the Northern District of California. The transmittal of this order to said Clerk shall be stayed 15 days from the entry thereof. If any party files a notice of opposition with the Clerk of the Panel within this 15-day period, the stay will be continued until further order of the Panel.

FOR THE PANEL:

Jeffery N. Lüthi
Clerk of the Panel

A CERTIFIED TRUE COPY

JUL - 8 2008

ATTEST
FOR THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

I hereby certify that the annexed instrument is a true and correct copy of the original on file in my office.
ATTEST:
RICHARD W. WIEKING
Clerk, U.S. District Court
Northern District of California
by_____
Deputy Clerk
Date 07/15/08

IN RE: BEXTRA AND CELEBREX MARKETING, SALES
PRACTICES AND PRODUCTS LIABILITY LITIGATION                    MDL No. 1699

SCHEDULE CTO-104 - TAG-ALONG ACTIONS

**DIST. DIV. C.A. #**          **CASE CAPTION**

MAINE
   ME  1  08-166          Marlene McAdam v. Pfizer Inc., et al.

MINNESOTA
   MN  0  07-4523         R.V. Perkins v. Pfizer Inc., et al.
   MN  0  07-4610         Garry Norman v. Pfizer Inc., et al.
   MN  0  08-1343         Deanna K. Renyer, et al. v. Pfizer Inc., et al.
   MN  0  08-1357         Michael S. Farciglia, et al. v. Pfizer Inc., et al.
   MN  0  08-1358         Marcia Anderson-Vance v. Pfizer Inc., et al.
   MN  0  08-1506         Marcel Rozario v. Pfizer Inc., et al.

MISSOURI EASTERN
   MOE 4  08-809          Michael D. Dobbs v. Pfizer Inc., et al.

MISSISSIPPI NORTHERN
   MSN 4  08-26           Estate of Doris Burnett, etc. v. Pfizer Inc.

OREGON
   OR  6  08-571          Gene Sjoberg v. Pfizer Inc.

CLOSED, GZSRECUSED, JAWRECUSED, STANDARD

# U.S. District Court
## District of Maine (Bangor)
### CIVIL DOCKET FOR CASE #: 1:08-cv-00166-DBH

| | |
|---|---|
| MCADAM v. PFIZER INC et al | Date Filed: 05/22/2008 |
| Assigned to: JUDGE D. BROCK HORNBY | Date Terminated: 07/28/2008 |
| Referred to: MAGISTRATE JUDGE MARGARET J. KRAVCHUK | Jury Demand: Plaintiff |
| Cause: 28:1332 Diversity-Product Liability | Nature of Suit: 365 Personal Inj. Prod. Liability |
| | Jurisdiction: Diversity |

**Plaintiff**

**MARLENE MCADAM**   represented by   **KEVIN M. FITZGERALD**
LEWIS SAUL & ASSOCIATES
183 MIDDLE STREET
SUITE 200
PORTLAND, ME 04101
207-874-7407
Email: kfitzgerald@lewissaul.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**
**PFIZER INC**

**Defendant**
**PHARMACIA CORPORATION**

**Defendant**
**G D SEARLE LLC**
*formerly known as*
G D SEARLE & CO

| Date Filed | # | Docket Text |
|---|---|---|
| 05/22/2008 | 1 | COMPLAINT against PFIZER INC, PHARMACIA CORPORATION, G D SEARLE LLC with Jury Demand<br><br>**IF FILING FEE IS BEING PAID WITH A CREDIT CARD, COUNSEL ARE INSTRUCTED TO IMMEDIATELY LOGIN TO CM/ECF AND DOCKET** *Case Opening Filing Fee Paid* **FOUND IN THE** *Complaints and Other Initiating Documents* |

|  |  | **CATEGORY.**<br><br>**IF FILING FEE IS BEING PAID WITH A CHECK, THE COURT REQUIRES RECEIPT OF PAYMENT WITHIN *48 HOURS* OF THIS FILING.**, filed by MARLENE MCADAM. (Service of Process Deadline 9/19/2008)(jlg) (Entered: 05/23/2008) |
|---|---|---|
| 05/22/2008 | [2](#) | CIVIL COVER SHEET. (jlg) (Entered: 05/23/2008) |
| 05/23/2008 | [3](#) | Summons Issued as to PFIZER INC, PHARMACIA CORPORATION, G D SEARLE LLC.<br><br>**Counsel shall print the embossed summons and effect service in the manner in accordance with Fed.R.Civ.P.4.**<br><br>**Note-If you are using Version 6 of Adobe Acrobat, be sure the PRINT WHAT field is set to DOCUMENTS AND COMMENTS (Click File, then Print to check this setting).**<br><br>(Attachments: # [1](#) Summons Issued as to Pharmacia Corporation, # [2](#) Summons Issued as to G D Searle LLC)(jlg) (Entered: 05/23/2008) |
| 05/23/2008 |  | Filing Fee Paid via Credit Card ( Filing fee $ 350 receipt number 0100000000000474791.), filed by MARLENE MCADAM.(FITZGERALD, KEVIN) (Entered: 05/23/2008) |
| 07/11/2008 | [4](#) | MDL CONDITIONAL TRANSFER ORDER (Attachments: # [1](#) Letter) (err) (Entered: 07/11/2008) |
| 07/28/2008 | [5](#) | Multidistrict Litigation Panel Order. Case transferred to the Northern District of California. (mnw) (Entered: 07/28/2008) |